(C.D. 3920)

Ted L. Rausch
Rocky Cycle Co. } v. United States

United States Customs Court, Second Division

(Decided November 12, 1969)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Andrew P. Vance*, trial attorneys), for the defendant.

Before Rao and Ford, Judges, and Donlon, Senior Judge

Donlon, Judge: The issue here is whether certain articles, imported for use with Honda motorcycles, are parts of motorcycles, as plaintiffs claim.

There are two entries. The protest as to entry 34273 relates to merchandise identified as gas caps with locks used to replace non-locking gas tank caps. The protest as to entry 25045 relates to rear carriers for attachment to a particular model of Honda motorcycle.

Liquidation, as to the gas caps with locks, was under TSUS item 646.92, as locks and padlocks of base metal; and as to the carriers, under TSUS item 657.20, as articles of iron or steel, not more specifically provided for elsewhere in the tariff schedules.

The competing tariff provisions are as follows:

Schedule 6, part 3, subpart D.

Subpart D.—Nails, Screws, Bolts, and Other Fasteners; Locks; Builders' Hardware; Furniture, Luggage, and Saddlery Hardware

\* \* \* \* \* \* \*

Locks and padlocks (whether key, combination, or electrically operated), luggage frames incorporating locks, all the foregoing, and parts thereof, of base metal; lock keys:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 646.90 | Luggage locks, and parts thereof, and luggage frames incorporating locks_ | 22.5% ad val. |
| 646.92 | Other _____ | 19% ad val. |

Schedule 6, part 3, subpart G.

Subpart G.—Metal Products Not Specially Provided For

Subpart G headnotes:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\* \* \* \* \* \* \*

Articles of iron or steel, not coated or plated with precious metal:

\* \* \* \* \* \* \*

Other articles:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 657.20 | Other _____ | 19% ad val. |

Schedule 6, part 6, subpart B.

Subpart B.—Motor Vehicles

\* \* \* \* \* \* \*

Motorcycles and parts thereof:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 692.55 | Parts _____ | 12% ad val. |

It may be noted that plaintiffs' brief asserts a duty rate, under item 692.55, of 10.5 percent ad valorem, although the protest claim correctly states the applicable rate as 12 percent. Plaintiffs' error is in attributing a rate reduction that became effective January 1, 1968, as being applicable to the instant importations which were in 1964. The rate reduction is not retroactive.

It is relatively easy to dispose of the protest claim that the gas caps with locks, entry 34273, are motorcycle parts.

There are in evidence a locking gas cap, representative of the imported caps, and a specimen of the non-locking gas cap which is standard equipment on the Honda. Plaintiffs adduced uncontradicted testimony that the locking gas cap prevents theft and keeps dirt, rocks and other foreign matter from getting into the gas; that it is essential to have a gas cap; and that the locking gas cap replaces the non-locking gas cap.

In *Gallagher & Ascher Company* v. *United States*, 54 Cust. Ct. 141, C.D. 2522 (1965), cited both by plaintiffs and defendant in their briefs, it was held that lock cylinders which were parts of automobile gas tank covers were parts of automobiles, on the ground that the gas tank requires a cover for safe and efficient use of the automobile and that when the owner chooses to use a locking cover it becomes a part of the automobile.

See, also, the recent decision in *Gallagher & Ascher Company* v. *United States*, 63 Cust. Ct. 223, C.D. 3899 (1969).

Following these precedents, we sustain the protest claim that the locking gas caps of entry 34273 are parts of motorcycles, dutiable at 12 percent ad valorem under TSUS item 692.55.

As to the carriers of entry 25045, we are not persuaded that plaintiffs' claim should prevail.

The record is clear that the motorcycle can be operated safely and efficiently without a luggage carrier. It is plaintiffs' claim that this is not so if and when the operator wishes to carry luggage or some other load; that unless his hands are free, he will not operate the motorcycle safely and efficiently; and, hence, the carrier, although optional equipment, is a part of the motorcycle to which it is attached.

This is an argument that can easily become *reductio ad absurdum*. Certainly there are loads beyond the capacity of certain automobiles, and to carry such loads a trailer may be attached. One would hesitate to conclude that the trailer becomes a part of the automobile.

Here it appears that the motorcycle is built to carry the driver and also in some instances, as the Honda in question, a passenger as well. It seems not to be equipped to carry luggage. If an owner wishes to adapt his motorcycle for use as a luggage carrier, he may purchase as optional equipment a luggage carrier for attachment to his machine. But the motorcycle as designed and sold will operate, safely and efficiently, without the luggage carrier. It is an accessory.

For distinctions between parts and accessories, see: *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964) ; *The Westfield Manufacturing Company* v. *United States (Korlis, Limited, Party in Interest)*, 46 Cust. Ct. 52, C.D. 2232 (1961), affirmed *sub nom.*, *United States (Korlis, Ltd., Party in Interest)* v. *The Westfield Manufacturing Company*, 49 CCPA 96, C.A.D. 803 (1962) ;

*United States* v. *Cody Manufacturing Co., Inc., Rohner Gehrig & Co., Inc.,* 44 CCPA 67, C.A.D. 639 (1957); *Rocky Cycle Co., Inc., Joseph A. Paredes* v. *United States,* 62 Cust. Ct. 550, C.D. 3825 (1969); *Herbert G. Schwarz, dba Ski Imports* v. *United States,* 60 Cust. Ct. 522, C.D. 3447, 284 F. Supp. 792 (1968), (appeal pending).

It is noted that the headnotes of schedule 6, part 3, subpart G, under which these luggage carriers were classified in liquidation, specifically provide that subpart G "covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules." We find that the carriers, not being motorcycle parts as claimed, have not been shown to be provided for elsewhere than in subpart G of schedule 6, part 3.

The protest claim for classification of the locking gas caps as motorcycle parts, is sustained. The protest claim for classification of the carriers as motorcycle parts, is overruled.

All other protest claims are overruled.

Judgment will be entered accordingly.